PATTERSON, Judge.
The appellant, William Fleming, appeals his convictions for sexual abuse in the first degree, § 13A-6-66, Code of Alabama 1975, and for attempted rape in the first degree, § 13A-4-2. He was convicted of the offenses after a jury trial and was sentenced to 15 years’ imprisonment for each conviction. The sentences were ordered to be served concurrently. After filing a timely notice of appeal, the appellant’s appointed counsel, who also represented him during his trial, filed a no-merit brief pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). After reviewing the An-ders brief and determining that the question of the admissibility of the victim’s hospital records into evidence pursuant to § 12-21-5, Code of Alabama 1975, warranted briefing, we ordered the trial court to appoint new appellate counsel for that purpose. New counsel was appointed, and a brief has been filed addressing the following: “Whether the trial court erred in admitting hospital records carte blanche, which included conclu-sionary statements and assertions by the alleged victim.”
The state’s evidence, which consisted largely of the victim’s testimony, showed the following. The victim is the appellant’s aunt, and she lived alone. The appellant forced his way into the victim’s home about 2:00 a.m. on February 26, 1991; he beat her about her head and body; he told her he was going to “fuck her if it took all night”; he got on top of her and tried unsuccessfully to penetrate her with his penis; and he inserted his hand in her vagina. Shortly after the incident, the victim was transported to a hospital where she was examined and treated by Dr. Gary Hill. The hospital records were offered by the state and were admitted into evidence over the appellant’s objection. The victim further testified, without objection, that the appellant had previously raped her.
The appellant testified that he was passing the victim’s home about 8:00 p.m. on February 25, 1991; that she told him that she had heard a noise and she wanted him to come and check her home for a possible burglar; that he did so and found no evidence of a break-in; and that after he and the victim had a drink of alcohol, he left. He denied assaulting the victim or trying to have sexual intercourse with her. He further testified that when he left the victim’s home, he went to the nearby home of a friend, Mollie Turner, where he spent the night. Mollie Turner testified that the appellant arrived at her house around 9:30 p.m. and that he remained there the rest of the night.
The hospital records consist of 44 pages and reflect treatment of the victim both in the hospital and as an outpatient from February 26, 1991, to April 1, 1991, apparently for injuries sustained in her encounter with the appellant. The records show that she was suffering from “thoracic lumbar sprains” and tenderness along the spine, that her “anterior chest wall [was] tender to palpitation especially the upper segments of the ... sternum,” and that she suffered “multiple traumatic contusions about head, chest, and pelvis.” In addition, the hospital records contain entries purporting to be the victim’s complaint and case history.
The emergency room record shows the following:
“[Complaint to nurse:] Admitted to [emergency room] ... was assaulted by a male approx 2AM this day. Assailant stuck his hand into vagina canal and [victim] was beat over the head [with] his fist”
*1197 “[Physician’s report:] This is a 69 y[ear] o[ld] female victim of alleged sexual assault. Patient claims to being assaulted [at] 2:00 AM. She states that her nephew (who was wearing a head disguise) physically assaulted her, beating her around the head & neck & chest, [h]e put his hand in her vagina & attempted to get her to manipulate his penis to get it erect. She denies penile penetration. She admits to her nephew raping her once before.... ”
Although this emergency room record clearly reflects that Dr. Hill was the treating physician, he did not sign the report. The attending physician’s type-written report, which Dr. Hill did sign, states the following:
“This is a 69 year old black female who presented to the emergency room at the Holy Name of Jesus Hospital with complaint of sexual assault. The patient offers a history stating that she was sexually assaulted by her nephew at approximately 2 AM in the morning at her home. The patient states that she was at home and asleep at which time she heard a knock on the door. Upon answering the door, she noticed that it was her nephew. The patient states that her nephew asked for money and also asked to have sexual relations with the patient. Upon refusal of both money and sexual advances, the patient states that she was physically abused and beaten about the head and chest and body with attempted force penetration.' The patient states to her knowledge, she did not have penile penetration, however patient states that she did lose consciousness and upon awakening noted that the nephew had his hands in her vagina. The patient states that he left at which time the patient’s friend called the AMS and the patient was brought to the emergency room.”
Another report signed by Dr. Hill lists under the heading “Impression” “sexual assault and trauma.” A nurse’s report states that the victim “[v]erbalized anxiety concerning discharge; possible attempt by nephew (alleged) of rape.”
The appellant argues on appeal that portions of the hospital records consist of inadmissible “double hearsay,” because they are a restatement of the victim’s accusations and that they, therefore, should have been excluded. The state argues that the appellant did not object during the trial on the ground of “double hearsay” and that he thus waived that objection. The record shows that the appellant made the following objection to the hospital records:
“MR. JACKSON [defense counsel]: [M]y objection to the medical records is that I know that there is an exception — a state statute allowing them in, but there are some entries in here that we don’t know who made them, and due to the nature of this case and what is going on, I think it would be necessary for the doctor to testify as to, you know, what went on in this particular examination of this patient because a lot of it is her opinion of what they were telling the doctor. We need the doctor here to give an objective medical—
“THE COURT: Before it goes out to the jury we will go over the portions of it that you think is objectionable and get it on record independently and made a determination whether it ought to be included or deleted or whatever.
[[Image here]]
“THE COURT: —Just tell me in substance what you think is objectionable.
[[Image here]]
“MR. JACKSON: Your Honor, there are notations in these medical records. There is no idea who made them. They are conclusions about stuff like rape and there is no basis for conclusions. I don’t know who made these notations in here. Dr. Hill only signed one report, which I have no objection to, but these other reports in here — I don’t know who made these notations. It is hearsay and we don’t know the basis. There is no physical examination on this woman at the hospital to show any objective findings by the doctor. It is just impressions of what she told them. It is in here — like this medical finding — no objective basis.
“THE COURT: What says the State?
“DEPUTY DISTRICT ATTORNEY PITTS: Of course, first of all those are records showing the period of time that the woman was in the hospital and she was *1198 examined, and as far as them being hearsay, the medical records are an exception to the hearsay rules. That is specifically by statute. The arguments that are made by counsel as to people making entries in there as being hearsay would be true of any medical records.
“MR. JACKSON: Your Honor, the thing up here saying stuff and there is no basis for where they are getting this information from. Dr. Hill — on the day he examined her doesn’t show the same thing that these other people put in here. It is conclusion-ary evidence too. It is a conclusion, your Honor, without any basis for the conclusions, not any medical objective basis for those conclusions.
“THE COURT: I’m going to overrule your motion. The medical records go in unless there is just some blatant — ■
[[Image here]]
“THE COURT: Anything blatant or just off the wall. If there is something in there where somebody is accusing him of murdering somebody that doesn’t have anything to do with this case or if there is something off the wall or so blatant. Do you see what I’m saying? Point that out to me and maybe we can strike it out, but just the fact that it is hearsay and you are not sure who said what—
“MR. JACKSON: Okay, your Honor. My last point — this is for the record — This strictly says that — this evidence in this case was that this woman was beaten all across the head with fists, and there are some impressions and conclusions that there was trauma, but there is no document that I checked her head and saw any contusions. No doctor or no anybody has made that record, but they have conclusions that there were.
“THE COURT: Show me where they are.
“MR. JACKSON: Right there.
[[Image here]]
“MR. JACKSON: Your Honor, I might point out that Dr. Hill who is her treating physician wrote up something else different. He makes no mention of no trauma. That’s why I’m saying the records are contradictory. The main treating physician doesn’t say anything about it. — Only what she says.
“THE COURT: I’m going to allow it....”
We find the appellant’s issue to be procedurally barred because we cannot conclude, from the above colloquy, that the trial court was adequately apprised of what portions of the 44 pages of hospital records that the appellant wanted excluded or deleted from the report; the trial court was not requested to delete anything from the records. The only report or notation that the appellant specified on the record is the “one report” signed by Dr. Hill (although the hospital records contain more than one report signed by Dr. Hill), and the appellant pointed it out as an exclusion to his objection. With this exception and no request for deletion or designation of portions for deletion, it appears that the appellant was objecting to the records (excluding Dr. Hill’s report) as a unit. However, as we will later discuss, portions of the record showing the diagnosis and treatment of the victim were admissible under § 12-21-5, even though they were partly made by attending nurses and physicians. Anderson v. State, 35 Ala.App. 111, 44 So.2d 266 (1950). “When a party objects to a document as a unit that contains admissible as well as inadmissible matter, the trial court is justified in overruling the objection.” Smith v. State, 354 So.2d 1167, 1172 (Ala.Cr. App.1977), cert. denied, 354 So.2d 1172 (Ala. 1978). “It is not for the trial court to separate the admissible from the inadmissible.” Tomlin v. State, 601 So.2d 130, 131 (Ala.Cr. App.1991) (quoting Pickett v. State, 456 So.2d 330, 334 (Ala.Cr.App.1982). “The objection should separate the good from the bad.” Id.
We note that, like trial counsel, appellate counsel argues the illegality of portions of the hospital records in general terms. For example, as stated in the appellant’s brief, appellate counsel’s argument is directed to the “‘double hearsay’ restating the accusations made by the alleged victim.” No one has yet specified the exact passages or notations in the hospital records that are to be asserted under the issue presented. Appellate counsel’s only specific reference in brief is to the “truly legible portions” of the records that he identifies as the typewritten *1199 statement signed by Dr. Hill. Yet this is the very report that trial counsel explicitly excluded from his objection.
Even looking to the appellant’s grounds of objection as an aid in determining whether the appellant properly specified those passages to which he was objecting, we cannot conclude that the trial court was alerted to any specific portion of the hospital records that the appellant wanted excluded on the “double hearsay” ground now asserted. First, trial counsel argued that the records contain some entries by unknown authors and, thus, that the physician should testify about the examination; otherwise, he argued, the records are hearsay. He also argued that conclusions stated in the records are not supported by any objective medical evidence gained from any medical examination of the victim and reflected by the hospital records; that they are merely “impressions of what [the victim] told them.” We presume that it is in this same vein that the appellant argued that the records contain “conclusions about stuff like rape, and there is no basis for conclusions.” Finally, he asserted that the records are conflicting and contradictory.
The first two of the three grounds of objections are the only grounds that are arguable as alerting the trial court to the present issue — the “double hearsay” of the victim’s complaints at the hospital. While the first ground is based on hearsay, we conclude by trial counsel’s remarks that the hearsay to which trial counsel was referring is not the “double hearsay” ground now asserted. He was clearly referring in general to some unspecified entries that were apparently authored by unspecified persons or at least by persons whose signatures are illegible. As noted by appellate counsel, an objection based on mere hearsay is precluded by § 12-21-5, which states, in pertinent part:
“When the original would be admissible ... a certified copy of the hospital records ... including records of admission, medical, hospital, occupational, disease, injury and disability histories, temperature and other charts, X rays and written interpretations thereof, pictures, photographs, files, written orders, directions, findings and reports and interpretations of physicians, doctors, surgeons, pathologists, radiologists, specialists, dentists, technicians and nurses, as well as of all employees of such hospital, forming a part of such hospital records as to the health, condition, state, injuries, sickness, disease, mental, physical and nervous disorders, duration and character of disabilities, diagnosis, prognosis, progress, wounds, cuts, contusions, lacerations, breaks, loss of blood, incisions, operations, injuries, examinations, tests, transfusions, hospitalization and duration thereof, medication, medicines, supplies, treatment and care and the cost, expenses, fees and charges therefor and thereof, a part of, or shown on or in, said hospital records of any patient in said hospital, when certified and affirmed by the custodian of said hospital records as provided in section 12-21-7, shall be admissible in evidence, without further proof in any court in the state where admissible, if and when said hospital records were made and kept in the usual and regular course of business of said hospital and it was in the regular course of business of said hospital to make and keep said records and that said records were made at the time of such acts, transactions, occurrences or events therein referred to occurred or arose or were made, or within a reasonable time thereafter.”
This distinction between the hearsay permissible, i.e., admissible, in hospital records and that that is impermissible (“double hearsay”) has further been recognized as follows:
“A hospital record of its patient, if shown to have been made in conformity ■with the requirements stated in the statute, is a record within the meaning of the business record exception to the hearsay evidence rule to the extent that the matter recorded is incident to the hospital diagnosis and treatment of the patient....
“The courts have been rather strict in adhering to the rule that the admissibility of hospital records should be limited to entries recording the details of the diagnosis and that the medical and surgical treatment of the patient and data pertaining to the cause of the injury, unless essential to a diagnosis, should be excluded.
[[Image here]]
“Recitals in the hospital record of communications from outsiders are not admissible....”
*1200 C. Gamble, McElroy’s Alabama Evidence § 254.01(7) (4th ed. 1991) (footnotes omitted). See also Burress v. Dupree, 287 Ala. 524, 253 So.2d 31 (1971) (while hospital records containing a diagnosis of a doctor who did not testify are admissible under § 12-21-5, hearsay statements in the record pertaining to the cause of the injury, unless essential to a diagnosis, should be excluded).
The other ground arguably preserving the instant issue of “double hearsay” — that the records contain conclusions like “rape” that are not supported by any medical documentation, but are rather “impressions of what [the victim] told” the health professionals— also falls short of asserting the appellant’s present argument. We consider this ground to have raised the question of whether the records contain any impermissible statement of opinion on an ultimate issue in the case. Thus, we conclude that the appellant’s present issue is procedurally barred on the additional ground that the trial court was not “apprised of the basis for the objection with sufficient particularity to allow an informed decision to be made on the particular legal issue involved.” Bland v. State, 395 So.2d 164, 168 (Ala.Cr.App.1981) (emphasis added). “The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.” Ex parte Frith, 526 So.2d 880, 882 (Ala.1987).
However, even assuming, arguendo, that the trial court could have gleaned from the above objection that the appellant was asserting that the conclusions were based on the victim’s statements, which constituted “double hearsay” and assuming, arguendo, that from the appellant’s objections, taken as a whole, the trial court was alerted to the specific passages found to be objectionable by the appellant, the instant facts would not warrant reversal. Clearly, the records contain inadmissible “double hearsay”; they contain much more than simply a diagnosis and treatment. However, any error that the trial court may have committed was harmless because the majority of the specific entries that we have found to be arguably “double hearsay” were clearly cumulative to the comments of Dr. Hill in his typewritten report, which trial counsel expressly excluded from his objections. The only notations that we have found to not be in Dr. Hill’s report are that the victim’s nephew was wearing a head disguise; that she claimed that he had previously raped her; that he attempted to get her to manipulate his penis; and that she was anxious about the possibility that her nephew might attempt to rape her after her discharge. The first two facts are cumulative of the victim’s testimony. We find the remaining two statements, in the context of the entire record, to be innocuous so as to not have probably injuriously affected a substantial right of the appellant. In our opinion, in view of all the evidence, the error was so insignificant that it could not have affected the outcome of the ease or contributed to the verdict. A.R.App.P. 45.
In conclusion, we hold as follows: (1) appellate counsel’s argument that the “truly legible portions” of the hospital records, i.e., the typewritten statement signed by Dr. Hill, contained “double hearsay” is not preserved for our review because trial counsel explicitly excluded this report from his objections; (2) assuming that the issue before us is arguably broader so as to include other renditions of the victim’s complaints, trial counsel did not adequately preserve the “double hearsay” issue for our review because he failed to adequately apprise the court of what portions of the records he wanted excluded or deleted; (3) again giving the instant issue a broad reading, and assuming that the trial court was alerted to the specific passages or reports that were the object of the appellant’s objections, the instant issue is still procedurally barred because the specific grounds at trial did not include the one now asserted and thus the assertion of those specific grounds waived all grounds not specified; and (4) assuming the issue is before us, any error that the trial court may have committed in this respect was harmless.
Finding no merit in the appellant’s contention, the judgment is due to be, and it is hereby, affirmed.
AFFIRMED.
All Judges concur.